call the second case now. I wonder if the lawyers who were going to argue this case before us could step up and identify yourselves for the record. Good morning. Good morning Mr. Dunn and you are? And Assistant State's Attorney Mary Boland on behalf of the people. Ms. Boland, good morning. 15 minutes each side. You can save out any portion you wish. I think you can safely assume that we're familiar with the briefs. I was preoccupied with something else. Justice McBride brought something to my attention that I should have noted a long time ago, and I've been distracted ever since she brought it up. It's all Justice McBride's fault. Yes, blame me. Not wise for me to blame anyone at this point. Yeah, before you start, tell me, why is this not moved? I anticipated that question, Your Honor. It's not moved because the order still exists. There's an order out there depriving this reporter of his statutory common law rights. Only in that case. That case is over. You mean he's barred forever, under your analysis, he's barred forever from ever attempting to exercise the, or take advantage of the law in a subsequent case? Well, there's basically a finding that his investigations of this defendant are not privileged, including his interviews of source witnesses, one particular source. How will this ever come up vis-a-vis your client, ever again? Well, my client has been investigating on an investigative reporting team, Mr. Kelly, for almost a decade. He has filed many reports on Mr. Kelly. The papers that the defendant filed in support of the motion demonstrated that on numerous occasions he has received videotapes, or at least on two occasions he's received videotapes, but there are actually other videotapes out there which have not yet surfaced. Wait a minute. The case is over with Mr. Kelly. Now, how could a court ever impose anything as to this reporter vis-a-vis this case that is not guilty? You think that this reporter is barred from doing anything if he gets some information out about some other tape? Who could possibly impose any order on him? I certainly think that the reporter's sources are disrupted. His ability to report is chilled based on the precedent by this order. That not only applies to this reporter for purposes of mootness, and as the State concedes this is a matter of public importance, it applies to other reporters reporting not only on Mr. Kelly, but on anyone else, because now a precedent out there. If this order is limited to this case, it cannot possibly be, or subject any other reporter to anything. This case is over with. And that order does not impact anyone, because Mr. Kelly was found not guilty, there is no appeal, and there's no order that binds your client. My client isn't bound, he's basically stripped, and the Illinois Supreme Court appalls that. Who could possibly prevent him from doing anything regarding a source, or writing any article, or doing anything he wants because of information he receives? He's chilled because he's already been held once not to have that. And some other trial judge might cite the gone order, right? At least in 2016 California, this is the gone rule. Illinois Supreme Court appalls that, took this question up, and in two separate cases, held there was a possibility of collateral estoppel against the reporter, and the only reason it decided that there wasn't was because… Forgetting about mootness, how is this ripe? Well, we have a final order in the Kelly case. How has anything occurred that is at issue? You say he's been chilled. How has he been chilled? He hasn't done anything, he hasn't taken any action, he hasn't attempted any action. How is this ripe? He continues to cover… How is it ripe? What is occurring now that makes it ripe for review? It's already occurred. The order's already been entered. We're asking for it to be vacated. I don't see how you can say it's ripe. There's nothing before us, there's nothing that has held him back in any way, shape, or form to do anything that he wants to do, and if he tried to do it, there's no order that says he can't. That order in the Kelly case cannot bind him to, or stop him from doing anything he wants to do. But we're not talking about an injunction, Your Honor. I know we're not talking about an injunction. We're talking about is this case, are you asking us to give an advisory opinion? Is this case moot because the R. Kelly case is over? Is this case ripe for anything? Is there anything now that's actually before the court that's even ripe? And the other issue is this individual won in the trial court. He won. He was not in any way harmed. At least, I know you're arguing he is, but he did not win on the issue he wanted to. But how can you challenge these other grounds that the court didn't use to dismiss or quash that subpoena? First, I would say, with respect to the ripeness and mootness, this is really no different than the case in People v. Palaccio, where they discussed this very question, and they said that they held that the issue before us is one that involves an event of short duration, capable of repetition, yet evading review, and held that, in that reason, the case was not moot and proceeded to deciding. And I would suggest that this court should have gotten that. Could do the same thing. This court should do the same thing. Could do. Could do. Don't have to. Right? The court, the mootness is obviously discretionary on the part of the court, if that's the point of the question. There were three components in this little colloquy that occurred between you and Judge Gahan. One of them had to do with the reporter privilege. One of them had to do with his First Amendment rights. He dismissed those by basically saying, you know, I've looked at the subpoenas, and I've looked at everything, and this is a question of a man who is probably a material witness. So he discounted the repertorial things at all. And if you're a material witness, of course, you can take the fifth, which your client did. Now, by taking the fifth, didn't he really waive the other two issues? If he really believed that he had a, you know, if he was a special witness under Judge Steigman's analysis, or whether the act implicated sources, okay, and that these were sources where the judge found that they weren't sources, the appropriate way to test that first two parts of his ruling was not to take the fifth and knock them both out. It was to stand on his first two arguments and go the contempt route. If he refused to take the fifth, okay, which is an option that Judge Gahan offered him, why couldn't it be argued that he waived the other two when he did take the fifth? I would suggest, Your Honor, the whole point of this entire exercise, all of the subpoenas, was to force this reporter to take the fifth. But he didn't have to. He didn't have to take the fifth. He could have stood on his first two arguments. One, that his sources were protected by the statute, and that, coincidentally, he was a special witness. And two, he had a First Amendment right to protect, okay? Those two arguments. He could have said, Judge, I'm not going to take the fifth. And he would have put Judge Gahan in the position of saying, well, I've already decided that you're a material witness. If you won't take the fifth, then I'm ordering you to testify. If you're called to testify, I won't testify. The question is to get yourself into a position where the only alternative for Judge Gahan would have been to order him jailed until he complied with the court's order, whatever that order might be. Take the fifth or testify. That's probably what would have happened. You could have refused to do that. Then you come up, and now you've got your issues, clearly before the appellate court, because he's in jeopardy. But by taking the fifth, okay, he waived the other two arguments, didn't he? He, in effect, took the out that the judge gave him, which is a material witness can always take the fifth. So I take the fifth. That's a concession that, you know, at least as far as the judge was concerned, I'm a material witness, as far as the judge is concerned. I'm not. I still insist I'm a reporter, but I take the fifth anyway. And he did. And the consequences for him of taking the fifth were nada. Oh, no, he actually had to stand and testify. Now, that may be an argument. That may be an argument that the judge forced him to take the fifth, forced him to take the fifth. But he didn't force him to take the fifth. He could have stood on his rights that he was claiming under the Reporting Act, and under his right to claim to be a special witness that was required some kind of an elaborate hearing before he could even be allowed to disgorge any information at all. He could have stood on that, but he didn't. And, you know, the second half of that paragraph, the plot show addresses that as well, Your Honor. It says that, you know, we decline to require a news media representative to subject himself or herself to the penalty. The nice thing about Palacio, though, and I have a great, great friend of Judge Steinman's. He and I go back to young days when we were both young lawyers down in Springfield. But you know and I know that everything in that Palacio decision about special witnesses is dicta. It wasn't necessary to decide the case. It was Judge Steinman creating a special witness category for reporters based on an analogy with judges. The court said we hold. I know. The court said. And it's never been overruled. This is the reason for our opinion. And as far as I know, no other court has ever adopted. If it weren't for that special witness doctrine, that reporter would have lost. That was the only reason he won. No, it wasn't. Take a look at the case again. There was absolutely no reason why Judge Steinman had to even go into that. He had already found the act in the plot. Now, that interpretation of the definition of source was made. Well, we can argue all day long about whether it's dicta or not. And this court basically used Palacio to extend the special witness doctrine to Judge Locallo because they said, you know, that applied to a reporter who wasn't part of the case, and so we're going to apply it to Judge Locallo. So, I mean, the court said. Judge Steinman would be very happy to be here today hearing you argue for his special witness doctrine. But as far as I know, the only judge who's ever enunciated in Illinois is Judge Steinman. Well, this court in Willis said the doctrine applies to reporters and repeated what Judge Steinman said. I thought that the Willis case was about whether a judge should be testified. Exactly. And they drew on the reporter doctrine. Yes, I know. I don't think she adopted the special witness analysis that was used for reporters by Judge Steinman. But we don't need to talk about that. But the language of the decision includes reporters. But your argument is just that he didn't waive anything by taking the fifth. He didn't waive anything. The fifth is almost like a Duxus Machina, you know, the God machine that descends. But it took another two issues off the table. And the only reason he could cite the fifth was because the whole point of these subpoenas was to force him to testify about an interview in order to prove that he had committed a crime.  What relevance? What relevance? That's why he should have refused if he were going to logically, logically proceed to get the issue with respect to his repertorial status before an appellate court. He should have refused to take the fifth, which was an option offered to him as a material witness. And then he could have said, Judge, I'm not a material witness. I'm not going to take the fifth. I'm standing on my repertorial privilege. I'm afraid you're going to have to throw me in jail. But at which point Judge Gaughan would have said, and I know how Judge Gaughan would have done it. He would have said, I'm ordering you to jail until you testify. I'm staying my order to allow you to take an appeal. Now you're up here on the repertorial privilege. There's no guarantee of that. Oh, sure there is. There have been reporters sitting in jail. I could guarantee you. Well, I can't guarantee you, but I would have. I'll make a long side bet that Judge Gaughan would have stayed his order to give you an opportunity to appeal. The point is, Your Honor, I can't guarantee that for the client. Sure you could. If you know Judge Gaughan, you could have. I can't. I don't know Judge Gaughan. Mr. Diogatis doesn't know Judge Gaughan. The fact that he's a judge. He didn't stay his order. You could come up on an emergency and you would have had him out in a matter of hours. We did come up on an emergency. He wasn't in jail at the time. I signed. I was one of the signatories on that one. You asked for a stay, but that was a different issue. And he gave us 24 hours to do it. I mean, if a judge gives me 24 hours to do something, I'm not going to do it. And how long did it take you to get a ruling on your request for a stay? You were prompt. We got it, actually. In 24 hours? Yeah. Well, we had 24 hours to get it to you. Yeah. And after that, you got it the same day or the next day. This Court, I might. You know, you could have done that. I mean, and then you would have had the issue of whether or not the reporters are special witnesses and whether or not the – you were arguing all along, you argued in your brief, that this videotape was a source, quote, unquote, that the word source is broad enough to include that kind of stuff. But you ignore the fact that you turned it over to the police yourself. But the videotape – Now, how can you claim a privilege on something that you've published? Nobody asked us to turn over the videotape. I mean, we turned it over. I know. What they wanted was, what did we do? But that's my whole point. How can you claim that that stuff is privileged when you yourself turned it over? But that's not what – Without any kind of a court order. That wasn't what – that's an issue. If this appeal had been about – I mean, if you're a reporter and you say – you know, you go on Jay Leno's show and you say, I'm a reporter and I have a secret, you know. I know that Politician X has a girlfriend named Girlfriend Y. But that's privileged because it was given to me as a reporter. But I'm going to tell you, Jay, that Politician X is so-and-so and Girlfriend Y is so-and-so. And you announce to the world your privileged information. But you're honest. You have blown your cover, haven't you? If that's what happens. And if you get a tape in the mail, which allegedly is, you know, given to you as a reporter, and you immediately turn it over to the police department and apparently also to the state's attorney's office, I guess. I don't know how it got there. Well, you don't know how it got there, but there's a suggestion that they got it from your client. In their briefcase. I don't know. It was an earlier tape, two years earlier. Yeah, but without any compulsion from the court whatsoever, you turn it over to the police department. Can you claim a privilege for that tape? Even if it is a source? This appeal is not about a privilege for the tape. The judge, Judge Gunn, correctly said, Mr. DeRogatis didn't have to testify about how he got the tape. He didn't have to speak about anything that could be in the source. Had he ruled against us on that? Didn't he say he got it in the mail? He said it was in his mail. But that doesn't mean he doesn't know who gave it to him. It was anonymous, but, you know. And that's the point. This is what happens then. You get the tape in the mail. Then he starts interviewing people. What is this tape? What do you know about this tape? He's already given the tape to the police. The chain of custody for the state, the material chain of custody for this case, has been established. It's frozen. They've sent it off to the FBI lab in Virginia. Yeah. We're not talking about anything. I know you're not. What we're talking about is that you want an opinion as to whether or not at the time he had the repertorial privilege. After he gave up the tape. After he gave up the tape. After he gave up the tape. That was hours on time. Right. And that's really going to be an advisory opinion because he negated the whole issue when he took the Fifth as a material witness. There's an order out there. We're seeking to have an order vacated. It exists. It's not been vacated. It holds. What does the order say? It says he's a material witness.  I guess it does say he's a material witness. That's the issue. This isn't source information, so I don't have to apply the Reporters' Privilege Act. Right. And you'd like to appeal that decision of the judge? We would like it reversed because we believe the interview with Mrs. Edwards after he turned the tape over to the police is by noffation a source. Right. And if you wanted an alternative source for this evidence, it was sitting right there in the courtroom. We go back to the question that Justice McBride asked you right from the get-go. What possible injury can occur to your client now? The injury to my client now is his ability to report on Mr. Kelly and probably anyone else. He can do whatever he wants. Because the order has a chilling effect. He can do whatever he wants. Mr. Kelly has been found not guilty of this case. There's nothing that's chilling your client. He can do whatever he wants. That order doesn't impact him from the day that Kelly was found not guilty. There's nothing prohibiting him from doing his job. The order is not prohibitive, but it does, in the First Amendment law, it does have a chilling effect. It forced him to make a choice that he didn't have to make. Right. That he didn't have to make. That's my point. It was his decision to take the bet. He could have stood on his original arguments. He had a repertorial privilege. Throw me in jail. The legislator anticipated this, though. What? We've been all over this. The legislator anticipated this. This statute provides that the privilege stays in effect pending appeal. In fact, it says you really can't be held in contempt until there's a final alert. So this legislator, the statute says this privilege still stays with Mr. Murillo until today. The real question comes down to whether or not by taking the Fifth that he really, in effect, waived all of his rights that he may have had before he took the Fifth. And, you know, there's absolutely, I think, no law on this, Your Honor. But, you know, let's remember the judge, nevertheless, he might not have made him testify, but he made him produce the interview notes. He made him what? Produce the interview notes. Well, actually, I do believe the record will show that when he did decline to answer the questions, he did indicate he was taking the ‑‑ he was exercising ‑‑ he was, by answering the question, he was giving up his reporter's privilege. He was giving up the right to the special witness doctrine, and he said his rights under the First and Fifth Amendments. No, actually, I think what he said, Your Honor, was that he asserted all of those rights. He said I respectfully decline to answer the question. On advice of counsel, on the grounds to do so, would contravene the reporter's privilege, the special witness doctrine, and my rights under the Illinois Constitution as well as the First and Fifth Amendments of the United States Constitution. Right. So he asserts his rights all the way through the process. But the trial judge rules. And then after the fact, the trial judge strips him of the other rights. Well, he didn't strip him of any rights that he wanted to exercise. Well, he said he was exercising on the Fifth Amendment. Yes, he did. He couldn't strip him of any rights. All he could do is make a ruling. And he did. He said you're a material witness. Well, he said he had no reporter's privilege. Huh? He said he had no reporter's privilege. And that's at the point where he should have said, you're forcing me, the alternative, the Hobson's choice you're giving me is that now I have to concede that I might be a material witness, so I'll take the Fifth. Well, we're dancing on the head of a pin. And I don't want to do that, Judge. We're back against square one. Well, we're dancing on the head of a pin, Your Honor. I mean, you're saying, basically, When you're faced with a ruling by a trial judge that you find totally unacceptable, what you do is you go to contempt trial. It happens every day of the week. In this case, he took, he asserted all of his rights. And what Your Honor is saying, well, in that case, he would have to assert, this is what Palacio says he shouldn't do, assert one right, and then let the judge rule on that one, then assert the next one. No, I'm not saying that. I mean, he could have stood on Palacio and just said, I am a reporter. I have a reporter's privilege. What you're asking me to do violates that, and your procedures for determining this whole thing are in violation of Palacio because I'm a special witness, and I'm entitled to that kind of a hearing. And if you're going to deny me both the repertorial privilege and the hearing I'm entitled to as a special witness, judge, I have no, the only thing I can do is to respectfully refuse to comply with your order. And the judge would say, well, I'm making you a material witness. You can take the fifth. No, I don't want to take the fifth. And that sets up the confrontation, which leads to the contempt, which leads to the appellate court. Well, he asserted all of his rights. Well, you would have been in the appellate court if he had. You know, it's not like he's not going to stand up and say, wait a minute, you know, forget the fifth. Okay. I think we understand your position. Do you want to sum up? And I think the point in Palacio is very clear. The evil to be prevented is when you tick off the powerful and wealthy, the lawyers find some ground to drag the reporter into court and make the reporter testify. I don't care if he takes a privilege. He's sworn under oath. He's under threat of contempt. And what does the reporter then do? Well, he doesn't report so aggressively on this man. The public doesn't hear about the next tape that the Sun-Times gets. Maybe the Sun-Times doesn't get the next tape. That's the injury to be prevented. That's why it's not. And it's likely to recur, which overcomes the mutinous argument that she's going to make. This is his beat. And if he's not going to write it, I mean. Somebody else. This is going to happen again soon. This is going to happen. I can't guarantee it any more than you can guarantee. No, but I know. I understand your position. So then it becomes it's up to us to decide whether or not this is a clear exception to the mutinous argument. It's a ten-year grudge. Even though we can't grant Mr. DeRogatis any kind of relief, we can take it on the grounds that public policy indicates that it's likely to recur, and the trial courts are in need of guidance. Well, obviously there seems to be some need of guidance. An interview with a witness isn't a source, and you don't have to apply the statute. That sounds like guidance to me. If I'm the defendant and I say, well, I'm not after sources, and that moots the entire statute, well, I think there's some guidance perhaps involved. So I think that it does. And I think the court should exercise its discretion in that respect. I don't believe that it's waived. I think that the evils that the statute attempts to address should be preserved, and that's what makes the appeal an important issue. Thank you, Counsel. Good morning. Good morning once again. Mary Bowen on behalf of the people. It seems clear that the argument here put forth by counsel this morning is that we won by raising the privilege, but that's not the privilege we wanted to win on. Right. So we would like this court to change the grounds and still give us our win, but on different grounds. Essentially, one witness was subpoenaed, one witness stepped up and asserted a privilege, and that witness's privilege was respected, and that witness was excused. Now, counsel talks about turning over the records, except the record will show, the record in the appellate court will show, that there was no producing of the records. When counsel was asked, the court initially issued the subpoenas on May 30th, then issued its written order on June 2nd of 2008. Then on June 3rd was the return date on the subpoena. June 3rd came and counsel appeared, but intervener did not. The reporter himself. And when counsel was asked, counsel said, well, we're appealing your order. Everything has to be stayed until the appeal comes down. And the court said no, but there was some colloquy with counsel, and due to some confusion that might have arisen, the court reset the return date to the next day, June 4th. And at that time, the court made it very clear that your client is to appear and your client is to bring certain documents so that I can review them in camera to determine whether we even have a source issue. On June 4th, the client did appear with counsel and did not bring any of the records. And the court asked about that and said, you are under a court order to appear with these records. And the response was, we're going to be asserting privileges. And we're not just asserting the First Amendment, we're going to be asserting these other privileges. And so after some short break where counsel worked out the procedure, the procedure was that counsel asked his client, the intervener, a reporter here, the questions and the answers were given as you've reported, Justice McBride. So in terms of mootness, yes, generally reporter issues tend to be matters of public concern. They do, don't they? They seem to be. But there is a First Amendment issue lurking here, isn't there? But there really isn't, because the issues are, the first issue is publicly judged. If I'm the judge and I put you in a position where you either have to take the Fifth or risk going to jail, those are your options. Stand on what you consider to be your right to assert these privileges. Or, in the alternative, take the Fifth Amendment, which is just a taint of sorts, isn't it? It's not a taint at all. It's a privilege owed to every person. I think that's really a stretch. Most people would clearly consider it a taint for them to exercise their right to self-discrimination because of a taint that they received. And the alternative is the possibility of going to jail. We don't know how generous the trial judge is going to be in allowing me to take an appeal before he sends me to jail. He may be a pretty hard-nosed guy who's convinced he's right and he will order me jailed immediately. I think this court could have ordered him to jail for not appearing when the court ordered him to appear. And the court did not. The court said, okay. But that's beside the point. My point is that when you suggest, as I think you're going to, that this whole issue is moot because there's no kind of relief we can grant him now, there is the public policy argument that this is likely to recur in other contexts. And the trial courts perhaps would welcome. I'm sure they would welcome our opinion on the special witness issue as applicable to reporters. Well, that is entirely within the power of this court to decide that this is a sufficiently important public interest to discuss and to give guidance to the lower courts. So you're not suggesting that we don't have the discretion to consider the possibility of looking upon this as an exception to the mootness? That's correct. I didn't argue that this court did not have jurisdiction in this case as I did in the companion case. I said, Natalie, what are you doing here? I wondered whether that question would come up. I read your brief. In my brief, I stated that the concern that the people have is that in cases like this, at least in my research of the cases that involve the press issues, often the parties don't seem to file responses. They just don't file briefs for expenses or for whatever the interest is. That leaves the court with one. But you prosecute bad guys. Why should you be in here arguing against Mr. DeRogatis, who is a citizen? Well, because. He exercises civil constitutional rights. We certainly have in criminal cases an interest in the coherent development of Illinois law. These rulings, these types of rulings, are not just going to apply to defense subpoenas. They're also going to apply to people subpoenas. And if this court chooses to consider this, if this court decided this was a matter capable of repetition, then the risk of no one responding except for the press is that the press's viewpoint is what is asserted to the court, and the court is left to have to do its own research. You could have granted Mr. DeRogatis use of unity and solved the problem right there, at least it would have got us up to this court quicker, presumably. Well, as Judge Gaw noted. You folks are here now filing a brief one at the trial level. You kept saying we don't want to get involved, Judge. Well, it's not that we want to get involved in a particular subpoena. We want to make sure. I appreciate that a little bit. I appreciate that. But in my concern is always when an appeal comes in that affects the people's interest throughout the state, then when I can get permission from the office, I will certainly write a brief in response. And that's really my goal here. I'm not going to defend what the defense counsel thought or the speculations of the appellant here about why a particular subpoena was filed or the colloquies that it had with the court, but my concern is simply that if this court chooses to consider this, and frankly I think this is as moot as it gets. You come in, you respond to a subpoena, you raise your privilege, you are excused. So you don't take any position one way or the other on whether or not reporters are special witnesses? Well, actually, I do take a position, and my position is because of the cohesive development of the law. I looked very carefully at the Palacio case, and one of the biggest concerns that I have about the Palacio ruling, as much as I respect Justice Steinman and his analyses, and I absolutely do, but nonetheless I think his concerns there essentially took the legislature's grant for a statutory protection on sources, took all of those elements, and leapfrogged it to entitle reporters essentially an absolute privilege, not even to have to respond until someone goes to court and essentially meets the elements that the legislature would have them meet as they assert a privilege. You see, ordinarily evidence is entitled to come into a case unless someone comes in and says, here, I have a protection. You should argue that Justice Steinman turned the whole operation upside down. He did. He turned it on its head, and he did so because I think he was concerned about, he couches the language almost in a First Amendment analysis. There's a chilling concern, trammeling the rights of the press, but the United States Supreme Court has said that if you are a material witness, if you have observed a crime, if you insert yourself into a case, that information is not subject to the First Amendment. We don't have to reach that level. So we don't have a First Amendment protection. So then the Palacio opinion kind of looks at this notion of who is a special witness. And all of the cases that are cited are always participating attorneys or judges. Or lawyers. Yeah. For the administration of justice, do you want subpoenas coming in and forcing counsel off cases? Do you want judges forced off cases? No. So for that reason, this special witness doctrine exists, which requires some level of scrutiny by a court before you just go off and use it. So you think it didn't do it in that case. I would certainly narrow that case to its facts. I will tell you that in the 17 years since that case has been published, it's been cited for that relevant purpose. There are some other issues. There was an arson issue and an ineffective assistance counsel. But for that relevant purpose, it's been cited to exactly five times in 17 years. Never with a great deal of enthusiasm. Two have been for judges. Two have been for attorneys. And the only case that cites it is Willis, and that was a judge case. And that just says, you know, here's what Palacio stands for. So no one, as far as I can tell, is citing that case for any purpose, other than that there is such a thing called the special witness doctrine, and then applying it to attorneys and judges. So that's the common law basis. The statutory basis is the source of privilege, which like every other privilege you come into court and you assert. But Palacio turns that all on its head and basically does exactly what counsel is advocating here and saying, I don't even have to appear. Because the burden is on the person who's trying to use compulsory process. And I will say, while I'm not representing a defendant here as a minister of justice, there is a Sixth Amendment right to compulsory process. And that's an issue. And the people always have a responsibility to introduce all the relevant and appropriate evidence. So we ordinarily judge the validity of a subpoena at the time of its return, and it's returnable to a court precisely to analyze the issue of whether there's a privilege. So that is the process. But Palacio turns that process on its head and says, proponent of a subpoena, you have to meet all the elements essentially of that privilege just to get the subpoena issued. And I think that's the problem. That's the biggest problem that I have with Palacio. And that's why Palacio needs to be narrow to its own facts. It clearly doesn't apply here. It doesn't apply here because it wasn't invoked here in the sense of the court's ruling. Essentially, the appeal is all about the court's ruling. And while counsel may like other grounds better than the ground that he won on, counsel essentially was, the counsel's client was excused on that ground. So you don't think that forcing him to take the Fifth Amendment is sufficient grounds for us to latch on to? Well, in that case, you have to take every case where someone took a Fifth Amendment and was excused on the basis of that Fifth Amendment. Only if they appealed it on that ground. That's true. So that would be a matter for your docket and for your consideration. I'm not saying you can't consider this. I'm saying this case especially is moot for the reason there is no relief. He won on one of the privileges he raised. The court excused him on that privilege. And as to the remainder, those are not right for this court's review at this time. Thank you, counsel. Thank you. Down to final words. Final words. Just to correct a part of the record, the interview notes that were produced after the hearing and after the court excused the witness. And there was an additional colloquy. The defense counsel requested. That's not a record in this case. It is. I believe if you go all the way to the end of the hearing is when the. . . He did turn over some material. Mr. Adams, yes, requested that the. . . And it was pursuant to your order, Your Honor, that it was turned over in camera. In camera. Right. But was there a ruling subsequent to that by Judge Gone with respect to the nature of those documents? We'd love him back. But, no, he still hasn't. He hasn't ruled on it. I don't know what happened to him. Okay. But there were materials turned over to Judge Gone pursuant to that order that was issued by the appellate court. Well, that was what defense counsel leveraged from. They said, well, we should at least get the interview notes in camera. And after quite a bit of talk, there was actually discussion about the immunity issue and everything else at the end of that day, Judge Gone ordered the production of those notes. I think he might have had a deadline. I know that we turned him over, I think, that night or maybe. . . I believe it was. . . He might have had a deadline. Okay. So, anyways, I want to say that to that extent, this reporter was compelled to produce source information in this case. And that's why we want it vacated. With respect to the material witness, I don't. . . I think it's an abuse of discretion if you want to call this a material witness. This is testimony about an interview. . . I know. It raises an interesting issue because it's conceivable under certain facts, not suggesting that they're here present. It's conceivable that a reporter can both have a privilege and be a material witness. Oh, of course. Both. Of course you are. And, you know, I think Judge Gone, when he first looked at this case, may have been thinking exactly that without ever having articulated it. Yeah, he's a reporter, but it's also. . . I mean, through no fault of his, through no fault of the reporter, he is also a material witness. You know, the record. . . If somebody has divulged information to him about the crime, okay, that may be highly relevant to the defendant's innocence, you're not suggesting that the defendant doesn't have a right to that information, are you? Well, if he goes through the statute, yes. I mean, it's not like a priest in confession. No. Or is it? Or is it? It is. He has to still. . . If this reporter had a murder confession, you would still have to follow the statute. Okay. You would have to show you couldn't get it anywhere else, among other things. Well, you mean you would have to move through the stages to reach the fact that he's a material witness. The application would have to be filed, the findings would have to be made, the judge would have to consider the various factors. Well, fortunately, we don't have that fact pattern before us. But I see your point. Well, the judge short-circuited it. He said, I'm not going to do it, even though the Supreme Court says that's what you've got to do, regardless. Well, that's if he had found that he's both a reporter and a material witness. But he didn't find that. He suggested that he was just a material witness. You know, what the judge told us was, you know, the witness testified that on February 4th, she and Mr. DeRogatis reviewed a copy of Peoples No. 1. That was three days after Mr. DeRogatis had turned the tape over to the police, which implies it was a copy. A possession of child pornography is a crime. Well, how is that a material witness to what Mr. Kelly was charged with? All that is is putting the reporter on trial regarding a completely separate event. It's not a material witness. And as I pointed out to the judge, what does this have to do with the chain of custody? Nothing. We got turned around. We all walked in there thinking, yeah, he wants to know where the tape came from. At the end of the day, those weren't the questions that the judge allowed. Instead, the questions he asked were all questions relating to source interviews conducted after he had given the tape away. And it was only because they wanted to put the reporter on trial, which throws us, of course, right into the Palacios-Ramsburg situation. I just want to say a little bit about the special witness doctrine. This court in Willis did say it extended to news reporters. But the reason why it hasn't been cited was because Palacios took an artificially narrow view of the definition of source. Basically said it had to be a person, not the means. And then it found itself with the reporter exposed and said, well, we'll apply the special witness doctrine for reporters for the reasons in the opinion. And it's not immunity. If you look at it, it's practically the same thing as the act. I mean, if you jump through the hoops as the state did in the Pauls Act case in front of the Illinois Supreme Court, you get the testimony. If you can prove the reporter's the only one who has it and it's relevant and the public policy demands it, you get it. We're not saying anybody's immune. All we're asking for is that our rights and our process be respected. But later, the Fourth District decides the Slover case and says, wait a minute, we didn't really quite get that right. There is this part of the definition that says means. So this reporter's photographs, even though you've just got to identify a person, that's protected. Once that decision came down, which the dissent in Slover says, wait a minute, you just overruled Palacio with respect to the definition of source material in the act. There's no reason to really rely on the special witness doctrine except in a very exceptional case. Those exceptional cases don't come up in front of the appellate court because nine times out of ten, we have a privilege applies to the witness and we find out that, wait a minute, there's all sorts of other available people who can testify. Mrs. or Ms. Edwards can testify. The police sergeant can testify. The defendant has other witnesses with respect to who manufactured the tape that can testify. And the inquiry ends. I mean, we cite three cases at least where it ends just on the alternative witnesses. And I think that's why Palacio was soundly reasoned that the privilege was needed to be there, but only as a backstop. It's not the doctrine. The doctrine the legislature lays out in the act. That's why we want the order vacated. We're not asking for an advisory opinion. We just want the order vacated and say that, you know, this was source material. You've got to follow the act. That's all we want. Thank you, Your Honors. Counsel, thank you both. The case will be taken under advisory. Thank you very much.